You see the court rule, reconstituting panels all over the courthouse. I've never seen it quite so much, but we all like it because not only do we get to see a different set of lawyers, we get to see different colleagues at the bench. So I'm glad for that. The case that we have this morning is Foster v. Wynne. Okay? Now we've got the case right, and if we don't say so, Mr. Bowman, glad to hear from you. Gary Bowman May it please the court, my name is Gary Bowman. I represent the appellants Karen Foster and Vicki Marsh. I'd like to first address four factual, small factual issues that reading the briefs, again, are not clear from the briefs. I'm not sure how much difference they make, but still they're not clear. First is the amount of time that elapsed between the mandate from this court from the prior appeal until Foster and Marsh filed their motions to intervene. Mr. Wynne says in his briefs it was four months. It was not quite four months. It was about three months and three weeks. The second point that I want to clarify is that Mr. Wynne says in his brief that Ms. Let me suggest you just make those corrections when and if they become necessary to your argument. We've read the filing of this case. Let me ask this. Do you, you do agree, don't you, that your statute of limitations has run before you moved to intervene absent equitable tolling? Yes, sir. Yes, sir. Just to clarify, our contention is it had not run for either. No, no, no, no. Prior to the, uh, the district court dismissing the case initially. I didn't ask you that, but I'll take that point. Yes. I was establishing this from my understanding that, um, the statute of limitations had run for both plaintiffs by the time there was a motion to intervene. Yes, sir. That's correct. And then there would be, I believe, some requirement of equitable tolling for you to be able to get around that block. Yes, sir. That's correct. What, what do you propose, what are your arguments on equitable tolling? Isn't that, isn't this the crux of your case? Yes, sir. It is. And that, and that's all I really wanted to talk about this morning was not waiving any other arguments. Sure. Yeah, you made them in your brief. You don't waive them. Yes, sir. Um, so there are two factors under the Supreme Court's Holland v. Florida case and this court's Harris v. Hutchinson case. First is whether the, um, uh, intervenors acted with reasonable diligence. And, uh, the factors I think that the court should look at here regarding reasonable diligence is that there's a four-year limitations period on civil RICO. And it, that's the measuring stick of what diligence. Let me, let me stop you. Yes, sir. I guess the condition preceding is you don't think this appeal is, is moved. No, sir. Correct. No, sir. Because if it went back to the district court, the district court could decide to let the intervenors proceed, uh, with an independent action. Okay. So on reasonable diligence, um, there's a four-year limitations period. That's the measuring stick of what diligence is. Absent this, uh, appeal, reversal, going, uh, uh, this, uh, the sort of unusual circumstances of this case, Foster and Marsh would have had four years to bring their civil RICO case. If they brought it within the four years, that would be deemed reasonably diligent. They didn't bring it within the four years, they blew it. Essentially here, just, uh, Judge Moon said that they weren't reasonably diligent or Marsh wasn't reasonably diligent because she waited three and a half years. That's true. She did wait three and a half years. I think you misread that. As I read the opinion, I think he doesn't limit you to three and a half years. I don't think. I think he's just suggesting as an example of you could have done something even before then. But I don't think that, do you think he ruled that you only had a three and a half year statute of limitations? I don't think he ruled that way. And I think that you read it correctly. But the point is that taking it that way, yes, that's true. But that doesn't really mean that she's not reasonably diligent because she had four years. Sure, she should have, like everybody on most things that they do, should do things sooner rather than later. But she had four years. And so to deny her equitable tolling in these circumstances is really to take six months off of her four year clock. And that's tantamount to shortening, depends on the way that I'm presenting it, that's tantamount to shortening her statute of limitations or her limitations period. What were you prevented from doing during that final six months? Well. Weren't there steps you could have taken? Yes, sir. I think that. And by the way, before you answer that too quickly, if there were, then doesn't that defeat your claim of equitable tolling? Well, when I say yes, sir, I'm just saying I understand the question. Oh, okay. And when I say wait a minute, I didn't want you to hurt yourself in your argument, okay? The question, that really gets at extraordinary circumstances, I think, as much as reasonable diligence. What could Foster and Marsh have done in the period after the district court dismissed CBLR's case saying that on the precise same facts that RICO's continuity requirement had not been met? Did you file a motion with the district court to protect yourself? And go, Your Honor, we know that the case has been dismissed, but we filed to protect ourselves. Could have done that, couldn't you? I don't. I'm not aware of any type. I've never seen. Did you try it? No. Could you have filed a motion to intervene in the appeal at this court? I don't think so. You didn't have to file a motion. You could have just filed a lawsuit and in the lawsuit make it clear that you were filing the lawsuit in order to protect yourself against the tolling of the running of the statute. Yes, sir. And from this perspective, with all due respect, from the perspective of down here in Richmond, up at the bench, this case looks differently than it does from down here as a lawyer with a civil RICO case in district court. When we were here before, when Judge Shedd was on the panel. I was a district court judge for 12 years, and I had lawyers stand up and go, Your Honor, I know you've ruled this way, but we're making this motion to protect an interest. And what you do as a judge, you go, I understand and thank you. Of course, your motion is denied. But at least the lawyer has taken a step, and judges understand that. No, sir, I'm not sure they do. You don't think they do? That's what I want to talk about. No, sir, I don't think they do. I'll just let you say this. Note for the record. I said judges do understand that, and you said judges don't understand what they're doing. Yes, sir. And I'm saying this from the perspective, frankly, of a lawyer who has been sanctioned by district court. And I say it from the perspective of a lawyer who has defended other lawyers who have been sanctioned by district court in a civil RICO case, this particular judge in a civil RICO case against another lawyer. As we discussed when we were here before. But that's a very broad statement. It doesn't say anything about the nature of the sanctions, the merits thereof. Are you suggesting that this judge would have sanctioned you had you gotten up in court and said, Your Honor, I know that you have ruled. The case is going to be appealed. In the meantime, the statute of limitations is running against my client, and I'm filing this lawsuit in order to protect my client's interest. Are you saying that you would have been sanctioned for that? I'm saying that if there was a dialogue where I was in front of the judge and saying that, then that's possible that that could have occurred. Well, except the posture. And then you could have appealed the sanction and come before us. And presumably, if you had filed that lawsuit in good faith, I would think that this court would have would have decided in your favor. I mean, I know this is hindsight. Yes, sir. That's precisely that's the exactly. But you're asking the court to invoke its equity jurisdiction. You've got to make a showing that you did something more than just sit around and wait to see how the appeal would turn out in this case. Yes, sir. As I was saying before, when we were here last time, one of the main things that we talked about was how district courts disfavor civil RICO, and that the court opinions are basically metaphors of why you can't have a civil RICO case. Now, this was already a disfavored cause of action. The district court here on the same facts had already ruled that the civil RICO continuity requirement had not been met. Your client's request that you represent them. If it's a disfavored cause of action and you're worried about what the judge might do to you, realistically, you don't have to take a case from anybody. Just say, thank you. He's already scalped me one time. I don't care to be in front of him or I don't. These kind of actions are disfavored. I'm not sure. To say they're disfavored doesn't mean that the court's not open to the appropriate RICO action. What did this court do on your RICO? Yes, sir. It reinstated it, didn't it? Yes, sir. After the district court dismissed it, we came here. It was reversed. We went back, and the case was settled. Okay, so it was a successful civil RICO case. However, in general, they're disfavored, and they were disfavored. This case was disfavored by the district court on these facts before. And you represented the plaintiff who settled? Yes, sir. And these plaintiffs who are trying to get in the case after the settlement? Yes, sir. That's right. And so if we had filed realistically, I'm talking realistically, if the intervenors had filed a new suit, which they could have done on their own and met the statute of limitations, if the intervenors had filed a motion to intervene in this dismissed case, there wasn't a case, it was dismissed, so there was nothing to intervene in. Whether they could have intervened in this appeal, I don't know. A district court keeps certain ancillary jurisdiction after a case is appealed. Sure, sure it does. A district court is not foreclosed from each and every matter in a case that has been appealed. That's just the law. It would have been foolhardy, realistically. It would have been foolhardy to go right back to the district court after the district court had erroneously dismissed this case and tried to intervene. Now, I understand there are all kinds of things that can be said. Realistically, that's foolhardy. You could have filed another lawsuit, couldn't you? Yes, sir. And as I said, that would have been foolhardy as well because the district court, this same court, had already said that RICO's continuity requirement had not been met. Could you have filed that in state court? Well, they would have removed it, Your Honor. But you could have filed that lawsuit, and if it was removed, you still would have taken a step within the statute of limitations. Well, Your Honor, they would, yes. The case could have been filed in state court as far as I know standing here. But, you know, they would have. To answer Judge Chedd's question, that is, that if you had filed the lawsuit, it would have been foolhardy to go back to the district court. But had you done so, you would then appeal to us, and the issue of the statute of limitations would not be what you'd be arguing. Well, the prudent thing that my learned opponent would have done is he would have filed an answer, or excuse me, he would have removed the case from state court to district court, and he would have filed a motion for sanctions. Now, this dialogue that the court here visualizes would occur, that's not how the motion for sanctions work. They have to send a 21-day letter, in which case you withdraw the case. If we withdraw the case, then that vitiates the argument that we're making here. No, it doesn't. No, it doesn't. You could then say I asked for equitable totaling because I tried to do something. I filed something, but the court threatened my professional standing, the other side of the court. And so I was sort of given a Hobson's Choice, and I didn't want to be sanctioned,  Don't you think you would be on considerably stronger ground had that occurred? No, sir. Again, realistically, I live out here where this happens, and realistically that is not what would have occurred. Well, what would have occurred is you would now be in front of us on some kind of appeal or something going, I tried. I tried for my clients. I took an action within the statute of limitations period. I took it. Maybe it wasn't the right one, Your Honor, but I did something to get a matter called to the attention of the other side before the statute of limitations period ran. That's real world. And this is not what I would do. Now, that's not something that I was prepared to do as the lawyer. Now, could the clients have gotten someone else to do it? Maybe, but not really. They couldn't because of the complexity of the case, because of the posture of the case. The district court had already dismissed it. They couldn't have realistically gotten another lawyer. Now, the standards here on equitable tolling are, were they reasonably diligent? Not all possible diligence. The Supreme Court said in Holland v. Florida, it is not all possible diligence. It's reasonable diligence. Now, here, there was six months taken off the clock because the district court erroneously dismissed the case. This court then reversed it, and in terms of their statute of limitations. After this court reversed it, how long did it take you to add? It took three months and three weeks. That was the factual thing that I said at the beginning of my argument. So why? Why didn't you do it earlier? That's as fast as it could be done. Now, in terms of reasonable diligence, given the complexity of this case, that's reasonable. One could say it's not reasonable, certainly, but that was as fast as it could be done. In terms of the extraordinary circumstances, which is the second part of this test, this is a case of first impression. This hasn't happened before. It's an unusual and extraordinary circumstance. Now, the only things that would vitiate or that would have satisfied these extraordinary circumstances is they could have filed their case sooner. Yes, they could have, but their measuring stick was the four-year limitations period. What they could have done is they could have filed some action in court, and frankly, it would be in the district court, because if it's a RICO action, it's going to get removed or it's otherwise going to get to the district court. They could have taken some action into the teeth of the district court after the district court had already dismissed this. Why couldn't they have moved to intervene in the appeal? Why couldn't they have moved to intervene in the appeal? Now, let me tell you this much. You might be denied, but then you would have taken some action, and we'd be arguing about that you didn't take any action to, was the action you took to defend your client's position enough? Well, my time is running out, but if I could just answer that briefly. The appellee has not raised that argument about the intervention on the appeal, and frankly, standing here, it sounds to me like that's not something that could be done, but of course, I haven't researched it. I don't really know whether that could be done, but I don't see how a party who had not moved to intervene in the district court could then move to intervene in the appeal in these circumstances. Okay. They'd file a motion with the court moving to intervene, but that's how they would do it. But you've saved five minutes. Yes, sir. You've saved five minutes. Thank you very much. Mr. Mooney? May it please the Court, I'm Chad Mooney on behalf of the appellees. We believe that the trial court's decision to deny the motions to intervene should be affirmed for three reasons. The first of which So you think it's not moved? We believe that the appeal is moved given that the underlying case has been dismissed. Do you want to argue that first? Do we have jurisdiction to hear this case? Is this matter a motion of intervention? Is it moved? Yes or no is what I'm asking. Do you think it's moved? Yes, Your Honor. Since the filing of the appeal, the underlying case has been dismissed. But let me ask you this. I asked you to set you up so I could ask this question. Don't we have to have the right to review a motion, a judgment of the court to keep somebody out of a case? Don't we have to have a right to review that? Yes, you do have the right to review it, but there's precedent that establishes that once that underlying case has been dismissed, the issue to intervene is moot. I know that, but I understand that. But we aren't bound by any precedent you cite that we can't hear this case, are we? I still think the court can hear the case. I think it's not dispositive of taking the appeal, but I think it moots the motion. Do you think the question of the motion itself and the merits of the motion and the statute of limitations, is that fairly in front of us for a decision at this point? I don't think so, Your Honor. Okay, that's what I was asking you. But now the second question is, but I'm asking you this, don't we as an appellate court have to have some opportunity to review a denied motion to intervene, at least in some circumstances, don't we? Sure. So we do, but this is just not the right circumstances. That's correct. Why is that so? Distinguish the two types. When would it be appropriate and when wouldn't it be appropriate for us to get beyond your mootness argument? Well, I don't think it's appropriate in this particular circumstance because what appellants are actually asking the court to do is to send the case back or to overturn. No, we know what they're asking to do. I said, distinguish for me when you think the issue wouldn't be moot and when the issue is moot. Now you've told me you think these facts make it moot. What kind of motion to intervene denied in a case that's then settled, dismissed, or decided, when would that not be appropriate for us to look at? Well, I think it would. When would it be appropriate? I think it would be appropriate if the case was still open. No, no, no, but every case is settled or ended generally before it gets to us. I don't understand that. Let me ask you this much. I still can't get an answer from you. I'm trying to decide what you think, when would it be appropriate for us to review a denied motion to intervene when after that motion the case is dismissed or settled? When would it be appropriate? I guess I don't have the answer for you here today. So you think it's never appropriate? I'm not saying whether it's always appropriate or it's never appropriate. I just don't think I have the answer for you today. What's your best case then? I mean, you rely on this Chesapeake Bay Foundation case that we decided, but that case is distinguishable because the intervener in that case essentially conceded that the settlement gave it all of the relief that it would otherwise have sought had it been allowed to intervene. That's not the case here. These plaintiffs are entitled, if we agree with them, they haven't been made whole, and they're entitled to their own relief if they can get it. Well, I don't think the Chesapeake Bay case went so far as to say that the plaintiffs were entitled to the same exact relief. I think that was kind of vague on that particular point. As the appellants point out, the plaintiff's cause of action is independent of the intervener's cause of action, and we acknowledge that fact. But we think the rub of the Chesapeake case is that once that underlying case is dismissed, that moots the motion to intervene because there's no... The problem you've got is, as Judge Shedd has alluded to, is if the underlying case is dismissed and then they seek to intervene, that's a different scenario than what you have here. You have an active case. The parties seek to intervene, and it's denied. And then by the actions of others, they settle it. They're not party to it, and they can't vindicate their rights now because they've settled it. But they made the motion during the cause. I think we can appreciate your argument, but you might want to move on at this point. Sure, I'd be happy to, Your Honor. The second point that we address in our brief is the fact that the equitable tolling doctrine was properly denied in the district court. Why so? It's because both Marsh and Foster failed to demonstrate that they diligently pursued their rights in the federal district court by the active pursuit of filing a lawsuit. As the Court has already noted, this was a circumstance where you had three women who had alleged predicate acts against Mr. Nguyen and his related entities. And this was clearly a close relationship between these three women, and there was obviously some discussion among these three women because when Marsh had filed her lawsuit, excuse me, when CVLR had filed the lawsuit on November 30, 2011, it alleged predicate acts along with Marsh and Foster. So it had been very easy for Marsh and Foster to essentially piggyback on that lawsuit, but rather they adopted a wait-and-see strategy. It's like a train moving down the track. They're waiting to see if that train derails or if there's some sort of settlement so that they can hop on shortly before the station, and that's exactly what they did in this particular situation. They waited near... Marsh herself waited nearly seven years to file something remotely similar to a RICO action. Nearly... If they had filed that, would you have moved for sanctions? Well, Your Honor, it's very similar to the appeal of the CVLR case. We did not move for sanctions in the CVLR case. That case is no more... Marsh and Foster's case is no more sanctionable than CVLR's appeal of the district court decision. You have the same standard that an attorney has when filing a brief, and Rule 11B essentially states that you can ask for a good-faith modification or reversal of the law. We did not ask for sanctions in the CVLR case when it appealed the district court's decision. I can't say... I can't say, because there's nothing in the record, saying that whether we did or would not ask for sanctions in the second case, but, you know, those two cases would be similarly situated. You know, the appropriate course of action would have been to intervene prior to the appeal and then taking the appeal up together, or shortly after this district court's... or this district court's reversal of the district court's decision, whether you believe it was 3 1⁄2 months to 6 months, at some point in that time, there could have been a filing much earlier, but, again, there was no demonstration of diligence for 7 years prior to that, or 5 1⁄2 years prior to the district court's dismissal, or the 3 1⁄2 to 6 months after the reversal. And so we... Have you ever experienced in your practice when a lawyer makes a motion, knowing that on the current law, the lawyer's going to lose, but you just explain to the court that you have to make that motion to protect some interest? Absolutely. And, you know, sometimes you go before the court, you're sheepish, and you say, apologize, Your Honor, for doing this. This is the course of action that I have to take to protect... Just let me say, as a general rule, you should always be sheepish when you come before judges. But I've seen it. As a district court judge, I'll just say this and ask if you've seen it. Defense lawyers would stand up and go, Your Honor, I move that that document can't come in. I know, Your Honor, that under current law in the Fourth Circuit, that document can come in, but I make that motion because I want to preserve that issue and preserve that issue so that I may argue it. And you go, okay, the motion is overruled, but judges understand that. And I think, Your Honor, you can look behind the reasons that the lawsuit was not filed sooner. They were clearly adopting a wait-and-see strategy, and that's not the purpose for the application of the equitable tolling doctrine. The case law is pretty clear that it's usually for circumstances outside of one's control, and they clearly had the control and ability to file the lawsuit. They just chose to file it later. Well, even if we don't agree with you that they were awaiting a wait-and-see strategy, the fact of the matter is they could have taken the action that you propose, and whether it was for benign reasons or they just weren't counting correctly, that doesn't matter in this case, does it? No, I don't think it matters. They had every opportunity. I mean, they knew this suit was going on, and there was clearly some communication. They knew that by apparent discussions with the plaintiff in the underlying case, they knew this case was ongoing. They could have easily filed. What do you make of the contention that at least one of these plaintiffs was suffering from a disability that may have influenced her ability to actually protect her rights? Well, if you look at the motion to intervene, Marsha alleges that she suffers from autism. The point of the reference to autism was simply in the context of explaining how she was allegedly defrauded by when. It was not proffered for the reason to establish that was the reason that precluded a timely filing. And this is the first time that I've heard about this issue is on appeal, and it's an issue and a tactic of essentially Monday-morning quarterbacking, scouring the record to see if there's any other issues that they can raise on appeal, and I think this circuit in United States v. Muth has decided that issues heard for the first time on appeal cannot be considered, and there was nothing in the record to establish, no affidavit establishing that she actually suffers from autism. Marsha didn't support that factual statement. We have no doctor's reports. We have no medical evidence to determine or to submit that she has autism, so we don't even know. We're essentially speculating. What is our review that you maintain from this denial of intervention based upon the fact that the court says that you're not entitled to equitable tolling of a statute of limitations that's barred? I think it falls under the abuse of discretion. Is that what you're asking? So the issue is whether the trial court abused his discretion in determining that there was not due diligence to support equitable tolling. That's correct, Your Honor. And the basis of that would be speak to the due diligence because that's really the heart of this case, at least from the equitable tolling. The plaintiffs here contend they did exercise due diligence, and to the extent they didn't, it would have been essentially futile to take those steps of filing a complaint because, I mean, it was going over. And so the court essentially abuses discretion. Well, we don't think that this case is just limited to the due diligence problem. We also think that there is an absence of extraordinary circumstances, but to answer... So you're hanging your head on it. Both, and the district court found that there was the existence of neither. But what Marsh and Foster are trying to do is not... There's two components that I see on the diligence prong. It's what actions did you take and how quickly did you take them. If you look at Marsh and Foster, they didn't do anything. Their actions... They didn't do anything in terms of trying to file a lawsuit. They point to... Foster points to actions she took in her bankruptcy court and challenged the foreclosure of her property in the city of Lynchburg. So if you look at just what they did, there was nothing remotely similar to filing a RICO action. But then you also have to look at the time component, that they took a long amount of time to finally move to intervene in the case. Turning next to the extraordinary circumstances, the appellants point to the district court's dismissal. From that time until this court's reversal, that that constituted extraordinary circumstances. And I ask this court to focus not on how unusual the circumstances are, but the severity of the obstacle that would preclude the filing. And again, under extraordinary circumstances, you typically focus on the conduct of the part of the defendant or for circumstances beyond plaintiff's control. And what they are asking this court to do is to basically apply a different standard. Because they're saying that if we shift it away from... Let me back up a minute. We cited two cases. Why don't you just apply the standards you think apply to this case and tell us about the result? Well, we think they're arguing essentially that it's an unsettled area of the law or uncertainty of the validity of their claim. And there's circuit court decisions out of the 2nd and 7th Circuit, or the 3rd and 7th Circuit, that demonstrate that the uncertainty surrounding an area of law is not sufficient to constitute extraordinary circumstances. And that's essentially what they're arguing here today. And so that really shifts the control of filing one's case to the appellants. Because then they can come up with any conceivable argument to cast doubt on the validity of their claim. And so basically you're switching the circumstances from outside of one's control to control of the appellants. And we don't think that's proper. It's a flawed standard, and the equitable tolling doctrine is to be reserved for individual hardships. It's not to be applied liberally, and it's only to be reserved for the most rare circumstances. The last point of our argument is that the equitable tolling doctrine does not apply when extraordinary circumstances occur after the limitation period has run. You heard from opposing counsel that the 4-year statute of limitation applies in RICO actions. If we have a limitation period that ends after 4 years of the date of injury, if you have an extraordinary circumstance that occurs 20, 50 years down the road, well, that did nothing to preclude a timely filing. And that's what we have here in this particular case is from the date of injury more than 5 years have passed. What do you, if extraordinary circumstances is the erroneous dismissal of the action, are you maintaining that's when the trial court made the determination or when the appellate court made the determination? According to the appellants, they're saying from the time the district court erroneously dismissed CBLR's RICO action all the way until this court reversed the district court's decision. So it's that length of time that creates the extraordinary circumstance and that they were precluded from filing during that period. But if you look at when the district court erroneously made its decision, that was already anywhere from 5 to 5 1⁄2 years after the appellants first suffered any injury. But does it come from injury or discovery of injury? Well, it's the discovery of injury, but they knew earlier Marsh, for instance. Is that argument necessary for you to win this case that they knew for 5 years? Is that argument necessary? It's not necessary for us to win this case, but it demonstrates that there's more than one grounds that the appellant's brief or appeal can be denied. Again, we believe that in a conclusion, we believe that the district court's decision to deny the motions to intervene was proper because the equitable tolling doctrine did not apply for two reasons, as I just stated. They failed to demonstrate that they exercised due diligence in actively pursuing the RICO claim and that two extraordinary circumstances did not exist. Thank you, Your Honor. I have one last question on the standard review, and that is do you maintain that any of the facts in here are in dispute? No, Your Honor. It's how we interpret those facts. According to the appellants, they point to facts that occurred much later that would alter the running of the limitation period. But as far as the facts that were alleged, the court, I believe, looked at those facts in the light most favorable to the plaintiff or the appellants when they ruled. Thank you, Your Honor. Thank you. Mr. Bowman? The court asked Mr. Mooney when should review be allowed in circumstances like this. This equitable tolling jurisprudence really focuses, and the Supreme Court said in Holland v. Florida, it focuses on the particular case. I'm not arguing for a rule. I'm not even arguing for a precedent. I'm saying in this particular case, these are weird facts, and my clients were harmed on these strange facts. The standard of review is abuse of discretion? Yes, sir. It's abuse of discretion. And the rule should be applied here because my clients moved to intervene before the case was ended at the district court. Their motion to intervene was pending. Then there was an appeal out of the case, so they had to intervene before the case ended. Now, my clients had four years under the statute of limitations. Mr. Mooney argues the statute of limitations had already expired. The district court didn't buy that. They had four years. Because the district court erred, wasn't our fault. It was a fair game for the district court. It happens. They erred because the district court erred. Six months were taken off Ms. Foster's and Mrs. Marsh's clock. Then this court stepped in and reversed the district court's error. Their clock to do what? Their clock to intervene. Now, what this case comes down to, I think, based on the oral argument and based on the briefs, what it comes down to is should they have done something? Did they do nothing to the extent that they're not entitled to equitable tolling? Now, that's simply, I think, a matter of judgment, of course. But our argument is that in these circumstances, what they did was reasonable. The district court, the very court. What they did was nothing. So you think it was reasonable? That's not exactly true that it was nothing. If you look at the facts. What did they do as part of any type of notice, court notice, to the other side? What did they actually do? Well, in Ms. Foster's case, if you look at the facts, which is not something we've talked about here, but it's in the briefs, Ms. Foster had filed bankruptcy. And that bankruptcy, she had listed a RICO claim, and the bankruptcy case was pending at the time the district court dismissed the case. Now, remember, she still had six months on her clock. She had said in her bankruptcy schedule she had a RICO claim. It's unreasonable to assume that if she didn't have that six months, she wouldn't have filed the RICO case. Now, that gets back to, well, she should have filed it earlier. Okay, she should have filed it earlier, but she had another six months. So she didn't know she was going to get cut off. She had six months to do what? To file a RICO case. She had six more months to file the RICO case, but the district court said that this is not a viable RICO scenario, and so she couldn't file the RICO case, in our estimation, because the district court said that these facts, Mr. Wynn's actions, didn't constitute a viable RICO scenario. Now, in hindsight, and it's strictly in hindsight to use Judge Diaz's words, in hindsight, it appears now that she could have gotten Ms. Marsh, Ms. Foster, could have gone into district court and filed some paper and sheepishly say, oh, we're filing this paper. The parties hadn't appealed that dismissal from the district court. Pardon? What if that erroneous dismissal had not been appealed? Well, it wasn't. What if it hadn't been? Then they could. And you waited beyond six months? Then they would be out of luck, I think. So you are reliant upon them appealing this matter in order to protect your rights? This is an unusual circumstance. When the district court said that the RICO continuity requirement had not been satisfied on these facts, prospectively at that time, you assume the district court is right, and prospectively even you assume odds are that it's going to get affirmed up here. And so Ms. Foster and Ms. Marsh could have then filed another RICO case, filed their own RICO case, even though the district court had just said this is not a scenario for a RICO case. When you've got a statute of limitations out there and you've got an action that's pending there, and you know that action potentially can decide issues that will affect you, and you choose to wait until a period of time occurs when the district court says there's no action. I mean, how does that cost? I mean, it seems like diligence has to be considered in that light. Your fate is in the hands of someone else the whole time. You wait. How long did you wait? How long had that other action been out there? She has four years. I understand that, but how long had the other action that affected your action been there? About six months. And all along that time you just waited until it was dismissed, and then you waited until the appeal reversed it. And then you come in and then you waited there. You said you had to wait three and a half months later to file it. But then you bring an action and you're beyond the statute of limitations, and you said equitable tolling. Yes, sir. My time is up. You can answer that if you want to answer that. The reason why these people were entitled to equitable tolling is because if they had done something in the last six months, certainly they could have done something in the first six months, in the first year of their limitations period. They had four years. I don't think that it's frankly fair to say they should. Let me just say this, but you have to answer the question. Okay. It's not unlimited time. Okay. And so to say that they did nothing in that last six months of the limitations period when they could have, that's true, except the extraordinary circumstances here was that this district court had said on these facts that that was not a viable claim. So either those people can go straight into the teeth of the district court that had just said this case is not viable, or they could wait to see if the court of appeals said it was viable and then seek to intervene, and if the court said it wasn't viable, then that was the end of the story. Okay. But the district court's error and this court's 15 and a half months of deciding it, which are not, district court's not out of bounds. I'm not saying that it was wrong. Just let me have you finish up in another 10 seconds. Yes, sir. All I'm saying is that this is an extraordinary and unusual case, the type of case that the equitable tolling doctrine exists to occur. Okay. Thank you very much. We'll recess and then step down and greet the lawyers.
judges: Dennis W. Shedd, James A. Wynn Jr., Albert Diaz